This case, Wilmac.  I have to just make a comment. I've been on this court for 29 years, and it's such a pleasure to me to see women lawyers arguing before the court, finally in great numbers. It's a pleasure for us too, Your Honor. Good morning, and may it please the court, my name is Kate Stetson. I represent the appellants.  This case involves two issues, jurisdiction and equitable tolling, and the district court we maintain committed errors as to each of those issues. On the jurisdictional issue, the district court erred in concluding that the Medicare reimbursement statute at issue here was jurisdictional. On the equitable tolling issue, the district court erred in concluding that equitable tolling was not warranted. In 1990, the Supreme Court established what we now understand to be a rebuttable presumption that equitable tolling applies in suits against the government. That rebuttable presumption means, as this court noted in Hedges, that the question to ask when confronted with this issue, whether equitable tolling is available, is whether Congress intended for equitable tolling not to apply. That means we would have to overturn our own decision in Becton-Dickinson. Isn't that right? No, I don't think it does, Your Honor. As Your Honor pointed out in Hedges, which came out several years after Becton-Dickinson, there are many factors that the court, this court examines when it's confronted with an equitable tolling question. You're certainly right that Becton-Dickinson, as one of the factors it considered, was this issue about when Irwin kicked in, when that rebuttable presumption applied. I thought that John R. Sand and Gravel made it obvious that Becton-Dickinson was no longer in law, which shouldn't have been. I think if not John R. Sand, which involved the Tucker Act six-year statute, I think it may have been Scarborough v. Principia that made the point quite clear. There was a notion after Irwin that the rebuttable presumption there only applied in those relatively uncommon statutes where you could sue either the government or a private party. Why is Becton still good law? Is it because it dealt with a very unique system of law and tax laws? That's exactly right, Judge Fuentes. The reason that it is arguably still good law despite using as one of the factors examined the factor that we now understand to be impermissible is that that case involved a wrongful levy action. As we know under Brockamp, which was the tax refund case, one of the issues there whenever you confront anything that sounds in the tax code or a wrongful levy is you look at the structure of the statute, you look at the potential for a huge administrative burden on the agency and on these courts if equitable tolling is allowed. So as far as Becton-Dickinson is concerned, those factors are still good. But the point is that there's no private comparable to the laws that were under review in Becton. That was one of Becton's points, yes, but that's exactly the point that's now been overtaken by events. After Scarborough, what we understand from Justice Ginsburg's majority opinion there is that that's not the appropriate way to look at Irwin. Irwin can't be read that narrowly. This court recognized as much in Hedges when it said that equitable tolling is available in a wide range of cases and that Irwin has broad language. So right here is exactly where the district court made its first mistake. What the district court concluded, you can find this at A-9 in the decision, is that nothing in the statute implies congressional intent to allow tolling. That, after Irwin, is the wrong question. The district court had it backwards. You don't look at whether there was congressional intent in the statute to allow tolling anymore. You look at whether there was intent after Brockamp and after Hedges not to permit tolling. And as we know from Hedges, you look at a number of different factors. You look at the availability of other exceptions in the statute. You look at whether equity is already built into the statute in some way, as in the Begerle case, the Quiet Title Act. You look at how long the statute of limitations is. And here... So if equitable principle is not contained in the statute, you say that that signals a congressional intent, that we're going to leave it up to the courts to administer whether equitable tolling applies? Yes. After Irwin, that's right. And you can see that in Begerle. As this court pointed out in Hedges, one of the deciding factors in Begerle, which was the 12-year Quiet Title Act case, wasn't just that exceedingly generous statute of limitations. It was that the statute there had codified what we think of as the discovery rule, which is when the plaintiff knew or should have known of a claim against the government. And that's a classic equitable formulation. And so what the Supreme Court in Begerle said is that the code, the statute, already takes into account a certain kind of equitable tolling. What do you make of the appearance of the word jurisdiction in the title of the statute itself? I make nothing of it, Your Honor. The same thing was in play in the Truth in Lending Act case, Ramadan. That case also involved a statute that has the title jurisdiction. That case was found to have a limitations period. As Judge Nygaard wrote there, what you look for when you look at a statute of limitations versus jurisdictional issue is whether the time period you're talking about is simply a limitations period engrafted onto a jurisdictional grant. So the fact that the statute contains jurisdiction in the title doesn't speak anything to the language of the text of the statute itself. If you look at the text of this statute, it's very clear that this text sounds much more like the statutes that have been found to permit equitable tolling, Title VII, the Civil Service Reform Act, the Federal Tort Claims Act, and not at all like the couple statutes so far that have not been found. So if an opinion were to issue in this case a presidential opinion, we would have to essentially ignore the appearance of the word jurisdiction in the title? I think you would have to put that word jurisdiction in the title in its appropriate place, just as this court did in Ramadan. What's the right place? The right place is that it signals that there are certain courts that may take jurisdictional appeals. That's exactly how it was found to act in the Truman Lending case, but it didn't bear on the question whether the time limitations was a jurisdictional limitation or simply engrafted onto the simple jurisdictional grant. Isn't there a statute, and I'm just going all the way back, for a case in the Supreme Court that says that you don't count titles? Isn't that in the code itself? You may not know. There may well be. I think there may be a difference. I vaguely recall that, but I haven't thought about it in connection with this case. Tell us, because your time is limited, assuming that you convinced us that we can consider equitable calling, why should we consider equitable calling in this case? Why should the time be called? After all, wasn't this lawyer or his, well, tell us, wasn't the lawyer or the law firm negligent, non-diligent in not getting the notice to his desk in time? No. Here is why you should consider equitable calling. I want to begin with the time that we're talking about. We're not asking for an extra six weeks or three months or two years or eight years, as in some of the habeas cases this court has confronted. We're asking for an extra business day. How about the facts? When did he first, because they sent that notice that the administrator was not going to accept jurisdiction by facts? And the facts should have reached his desk days, not a half a day, but days before. And nothing in the briefs talks about the facts. Exactly. Why? I noticed the same thing. Good. And I suspect it's because the facts was never sent. We looked at our facts logs, and I will echo Judge Slogart's point, there is nothing in the government's brief, nothing in the joint appendix that shows that that facts was sent. The understanding I thought it said by facts on it. It said by facts on the letter, but I'm talking about the same kind of log, the same kind of receipt that the government put forward showing receipt of the certified letter at the earlier stage. What you're referring to, Judge Slogart, is the facts decision declining to review. Which was several, like the 21st? It was the 21st. It was on day 57 of the 60 day period. And if you look at the top of that letter in the joint appendix, it says by facsimile and first class mail. We have scoured our facts logs, we did it back in October of that year, to find any indication that the facts ever came in. And there is, more importantly than my representation to the court, there's no record at the government's end of things that that facts was sent. All we have, and this is the common understanding that we're working on, is that Wilmax attorney received by mail, by regular mail, the denial on the 60th day. It was on October 21st? It was sent on October 21st, the 57th. October 24th it was received. It was received on Friday. In the mail room. He received it that day. Not he. The firm received it in the mail room, and the person in the mail room didn't bother to go up and put it on his desk. No, let me correct you on one small point. There are two different receipt issues we're talking about. That was the board's decision. Yes. The board's decision created that initial mix up. The board's decision was received back on August 25 in our mail room. In the mail room. Now, shouldn't the mail room receipt be dispositive? If your firm, or whatever firm it was, I guess it was your firm, if your firm doesn't require its mail room employees to immediately send, deliver any government document to the attorney, then why isn't that lack of diligence? Because, Your Honor, we're not just talking about that one day. We're talking in addition about the effect of the Secretary's failure to abide by 42 CFR 405.1875B, which requires a declination to be sent promptly precisely for this reason, precisely to avoid the sort of circumstance where a lawyer or a provider receives in regular mail hours before what the government contends was our deadline to file a notice of declination. Your red light is on. I'm going to get you back on this point. Thank you, Your Honor. On your rebuttal. Thank you. I want you to think about what a lawyer's duty is when a lawyer knows that there's a possibility of an adverse ruling. Doesn't the lawyer have a duty to its client to prepare the paper so that they're ready to file that? Shall I answer that question now? No. Think about it. Thank you. Good morning, Your Honors. My name is Michael Leonard. I'm here on behalf of the Secretary of Health and Human Services. I'm tempted to begin where my adversary left off. What is the duty? And start with the second issue before the first. It's your argument. You can go anywhere you want. Well, thank you. Even if the court wanted to extend Irwin to Medicare provider appeals, this multi-million dollar for-profit company has given it no equitable reason to do so. The district court was right and it should be affirmed in its holding that the law firm or the appellants have failed to prove or carry their burden of proof that equitable tolling should apply to them in this case. WOMAC is here asking for equity so that it may seek more Medicare reimbursement. You're arguing that equitable tolling or assuming that it applies. I apologize. It's not logical. Our brief explains why we think this court lacks jurisdiction. And I'd like to expand on that. But I was going to begin because of the You're assuming that the statute is non-jurisdictional. I am. And you're addressing the merits of the equity issue. Correct. And you're saying that this one day late filing does not entitle the appellant to equitable consideration. Yes, Your Honor. I'm saying that the appellants have not proven that they are entitled to equitable tolling even if it applied. As I said, they are here because they want to seek more reimbursement, about two million dollars more reimbursement even though the company and its supplier have agreed that the services at issue are only worth one million dollars. Do we get into the merits of the actual dispute? No. No, I'm not. But this is just saying when you have equitable considerations and you're not dealing with an individual but a large corporation, I think that is a consideration the court might want to look at. And I'm just putting this issue in context. Well, I'm not sure though because then I might think that they have a very good argument to present and equity would require that they be allowed their day in court if you're going to invite me to look at the merits of the case. I do not wish to do that, Your Honor. Well, the merits of the case would be the 2.34, et cetera, million dollars. Correct. Correct. Very strange claim. Yeah. To me the question is whether this one day late filing is an extraordinary circumstance requiring an extraordinary remedy. Obviously it is not. Then you have to tell them why. The appellants are blaming the administrator for issuing the decision declining review late. They're blaming the statute for being confusing and they're blaming their mailroom for not timely advising the attorney that the decision had arrived. The major issue here, the major point is that the time began to run when the board's decision, they had the attorney sign receipt or the law firm sign receipt on August 25th giving them 60 days in which to... I'm not sure there's any dispute about the fact that the 60 days had run. The question is whether they're entitled to file after the 60 day period. And they mentioned that they had told the administrator in a writing that the date that they received the board's decision, making it clear that they were under a misapprehension. Does that entitle them to equitable review? This is a major law firm with major health care clients. They do Medicare reimbursement cases. It's a large part of their practice. They knew they had 60 days from the board decision in which to appeal. It was up to them whether they wanted to request the administrator to review the board's decision and they decided to do that. Let me ask you something following up on Judge Slover's, what I thought was her point. Actually the firm could have prepared a lawsuit in advance and filed it in the district court in advance. If it chose to. If it chose to and then maybe sort of stay of that. I mean does that happen? Like a protective... Because the 60 day or this filing structure is very tight. And you really don't know until the last minute whether you're going to get administrative review or not. So it would seem to me that you want to sort of be prepared. My question to you is that in your experience is this what lawyers do? They file claims before the administrative decision comes up? In my experience this is the only case in which the attorneys file out of time. I mean providers face this all the time. This statute has been in place for decades. And the 60 day filing rule you know even the secretary tried to address this problem but withdrew it because Congress did not give the executive branch the power to equitably toll the filing period. If the circumstances here does not qualify for equitable relief what would? What do we mean by equitable tolling? Well if you look at the... A hurricane. Well I don't believe that you can have equitable tolling in this case because I think... I understand that. But if we allow for equitable tolling and this does not qualify what would qualify? Well it would be something beyond mere attorney error or negligence. Irwin makes that clear. I mean this is like Irwin when the attorney... Or like an attorney disability maybe. Well if you are thinking that circumstances outside the control of the law firm might warrant it perhaps. I mean if you were going to apply equitable considerations you would look to see whether they were prevented by something beyond their control. I was saying like 9-11 or something. Something like that. You don't... The firm didn't have to ask the secretary to review. I mean that's not a requirement of exhaustion. Correct. And let's go back to Judge Fuentes interesting question. Could they have done both at the same time? In other words is there any rule that would... While they have asked the secretary to review and that's pending on the secretary's desk as are millions of other papers. Could they have filed the lawsuit and then withdrawn it if the secretary says I will review this? I don't see why not. There's no reg or something that says you can't do both contemporaneously? Nothing in our reg. Well actually there is a provision. The attorney could ask the board, the administrator of the board to reopen a decision but that's not judicially reviewable. In any case the filing date would not be changed because you have to file in court 60 days from the date of the board's final decision unless the administrator takes review. And I just wanted to come back to address the jurisdictional issue. Okay. I think this court knows that the Medicare statute is more than just reimbursement. This is a Medicare statute. The purpose of it is to provide health benefits to elderly and disabled persons. The structure of this act has two appeal routes. One for beneficiaries one for providers. They're distinct and different and they serve different purposes. The beneficiary which is the statute the Supreme Court has said this statute is highly protective of the beneficiary. It incorporates 405G of the Social Security Act which applies to disability appeals for the disabled. The same criteria apply in appeals by beneficiaries for their Medicare benefits. So the provider on the other hand is not the intended beneficiary of the act. It is there to do business, make money it's there for a different reason. You have to say provide services too. Of course. Of course they're being reimbursed for providing their service. But that was not the primary intention behind Congress. Well it was necessary. You wouldn't get the statute if you couldn't reimburse. Correct. It means to an end. I think what you're saying is that there's no comparable, no private comparable that the appellants here can use and that's why it's jurisdictional. Well there is no private analog in private litigation to the situation we have here with the government. Is that the point you're making? I think it's a point to be considered. I don't think it's going to be dispositive. Not in light of the Supreme Court decisions. Well the Supreme Court has courts that are pickable. Well no but the decisions that we have have made clear. That's not the dispositive issue. So why is it jurisdictional? I'm just looking at what we have here. We have the statutory purpose. We have statutory structure. We have the statutory language. For beneficiaries as I said equitable considerations are already incorporated into the judicial review provisions. For providers they are not. What do you make of the title jurisdiction? I think your honor pointed out correctly that in some canons of construction the fact that it's in a title put in by the codifiers that is not dispositive interpreting. I thought I read that once long ago. But I would point out that under the Bowles case the fact that the 60 days is a statutory deadline in what is an exclusive grant of jurisdiction to the court in these Medicare appeals. Might that relate to the period the administrator has to review a request? I'm not sure I follow your question. Does it also preclude the administrator? Doesn't the administrator have a 60 day period? He has 60 days and no longer in which to make his decision. Ms. Stetson pointed out that this was a long time that the statute really requires prompt action by the administrator and it's pretty hard to say the administrator acted promptly when he does whatever it is he or she does on the 59th day. The administrator had the appeal on the 15th day. He issued his decision on the 42nd day leaving well, I mean, he had 42 days in which to issue his decision. He issued it to the I have no confirmation of facts received but the face of the decision does say it was facts. What do we do with her point? But there's no finding that there's nothing, nobody, neither side has put anything in the record to show that the facts were either sent or received. Well, I can only speak I mean, I was feeling so proud of myself when I sold the facts business and now you tell me, she tells me it doesn't matter. All I can tell you is it's normally done. You mean when it says facts? The face of the decision reflects the normal administrative process and that's what they normally do. Does the government keep logs of facts sent? I think my secretaries when we send the facts get a piece of paper that says facts are sent. They do keep logs depending on different cases. I was unable, actually I don't know whether they have a log in this case or not. Nobody looked for it because it wasn't an issue. Right. So that's not going to be dispositive but in sum, the administrator did act within the time he was allotted by statute, by regulation, and the 60 days in which to file their appeal. Judge Wentz asked a question. In your experience do law firms or representatives of the provider prepare these papers in advance because it's so important for them so that they're ready to just hop down to the court and file the paper or do you not have experience in that? In my experience? In my practice? My personal practice? I don't know. I haven't had an occasion to see whether or not it was filed in advance or not because there has never been a case where it's been... But you would be served with a copy of the complaint and receive notice. Correct. But you haven't. But I haven't. This is the only one. Actually you don't get too many of these cases. I cannot say that you get the same number of these appeals as you might have tax appeals. That's for sure. But this is a very large program and there are millions of claims and it is certainly comparable to the tax program. There's administrative consequences to waiving the jurisdictional time frame. So in closing I'd just like to say that really we do differ substantially with the appellants. We do think that any presumption has been rebutted. The substantive area of the law is not neutral. It is a complex, highly technical, cost reimbursement issue that's more like tax and it doesn't really welcome or encourage equitable consideration. The statutory language again is in the statute, the time limit, and it's jurisdictional grant making it like bowls and other decisions of this court. Very dispositive factor. Everything is already in the statute. Let me ask you a question. I think you're summing up. You don't think that this is more like a breach of contract claim or reimbursement claim? Rather than the unique structure you're comparing it with such as a tax reimbursement? If it were a contract claim there would be no judicial review. That's clear from the John Sands case. So if you draw the analogy with private litigation, which is over the history of this program has never been established by the Supreme Court by the way. This has been a government beneficiary program where there is a unique federal program. There's nothing quite like it. It may have some similarities, some aspects of private litigation insurance law if you will, but this is not an off course of any of that. And if it were, it would be in the court of claims and there would be no jurisdiction to extend the filing period. Thank you. Ms. Stetson-Rebuttal, now you've thought about. I have and I'd like to pick up where you and I left off Judge, but I want to also acknowledge one point in particular that Judge Fuentes made, which is that we are not here on the merits of our case. We're asking to be able to make our case, not arguing that we should. We understand. Ms. Leonard is right, that we knew and understood that we had 60 days the way that this very odd statute works. We had 60 days to file what's the PRRB's decision was. And why didn't your firm prepare the papers? Because here's the thing we also knew. We also knew that after 45 days, and you can look at the joint appendix 403 to 404, and this is the comments in the Federal Register on promulgation of some revised regulations pertaining to administrative review, 48 Federal Register, 45766, that the administrator understood what the administrator called the concern and confusion that would result if a declination were not promptly rendered. What the secretary committed to doing in that Federal Register notice was rendering a declination within 45 days. Within 45 days. Within 45 days of what? Within 45 days of the PRRB decision. Otherwise, prompt declination would be declination within 60 days, which is valueless and worthless. So after that 45 days has run, here is what happens. The providers understand that if no declination is rendered, if review is accepted, anything else that occurs, whether it be a denial, an affirmance, a modification, or a remand, triggers a separate 60 days statute. You think that's good lawyering? That they should rely on the fact that there's a possibility that the firm will take review? Your firm gets paid from the client for every hour that its lawyers work. I can't imagine that when you have a claim of this amount, they wouldn't have prepared the papers. If they hadn't, then how could they have filed it the next day? Oh, Your Honors, we did have the complaint prepared. What we were not prepared to do was to receive the declination in the regular mail on the 60th day of the 60-day period when the administrator committed in the Federal Register to rendering those declinations by the 45th day. The problem is that you knew the clock was running. And on the 46th day, you knew it hadn't happened on the 45th. So you had seven days. Correct, but on the 57th and 58th and 59th and morning of the 60th day, what we took at that point was that we were in the territory where one of those four other options, affirmance, denial, remand, which was a very real possibility in this case because of the nature of the decision, or a modification was in store. And any of those options produce a separate 60-day period. Thank you. Thank you.